UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

R. ALEXANDER ACOSTA,
Secretary of Labor,
United States Department of Labor,

                *Plaintiff*,

                v.

EXCLUSIVE HOSPITALITY LLC,
KRISHNA HOSPITALITY LLC, STERLING
HOSPITALITY, LLC, KAUSHIK PATEL,
Individually and as an Officer, and
CHANDRESH PATEL, Individually and as an
Officer,

                *Defendants.*

Complaint

Civil Action No. 18-cv-2882

1.     Plaintiff, R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, *et seq*.) ("the Act" or "the FLSA"), alleging that Defendants (collectively, "the Hospitality Employers" or "Hospitality Defendants") violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages and liquidated damages; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

2.     The Secretary brings this action seeking, *inter alia*, back wages and liquidated damages for several dozen housekeeping, front desk, and maintenance workers employed by the Hospitality Defendants at three hotels in Queens, New York.

3.    The Hospitality Defendants are the companies that, together, employed the hotel workers, and the individual company owners and members who oversaw the day-to-day labor performed by these employees. Although each LLC nominally operated separate hotels, the Hospitality Defendants operated as a single employer, paying employees out of separate corporate accounts regardless of where the employees performed work and assigning employees among the three hotels to fill staffing gaps.

4.    The Hospitality Defendants deprived their employees of their rightfully owed wages, in flagrant violation of the Act. Although the details of Hospitality Defendants' scheme changed over time, the essence remained the same: since at least 2015, the Hospitality Defendants paid virtually no overtime premiums as required by the Act in the myriad weeks that they directed their employees to work more than forty hours each week. The Hospitality Defendants' employees typically worked at least 48 to 60 hours per week, and often far more. At times, the Hospitality Defendants paid their employees cash off the books to conceal employees' total hours worked, but never included the required overtime premium. Other times, the Hospitality Defendants paid their employees from multiple payroll accounts in a single week, to disguise the fact that employees had worked more than forty hours and were owed premium pay. More recently, the Hospitality Defendants falsified yet other information in their payrolls, manipulating employees' hourly rates to conceal the actual number of hours worked.

### JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

6.      Venue of this action lies in the United States District Court for the Eastern District of New York because a substantial part of the events or omissions giving rise to the claims occurred in this District, specifically in Queens County.

## FACTUAL ALLEGATIONS

### THE PARTIES

*Plaintiff*

7.      Plaintiff, R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

*The Corporate Hospitality Defendants*

8.      Exclusive Hospitality LLC, Krishna Hospitality LLC, and Sterling Hospitality, LLC, collectively employ the housekeeping, maintenance, and front desk workers that comprise the workforce at three hotels in Woodside and Long Island City.

9.      Defendant EXCLUSIVE HOSPITALITY LLC ("Exclusive Hospitality") is a company organized under the laws of the State of New York, having its principal office at 87-23 144th Street, Jamaica, New York 11435.

10.     Defendant KRISHNA HOSPITALITY LLC ("Krishna Hospitality") is a company organized under the laws of the State of New York, having its principal office at 87-23 144th Street, Jamaica, New York 11435.

11.     Defendant STERLING HOSPITALITY, LLC ("Sterling Hospitality") is a company organized under the laws of the State of New York, having its principal office at 87-23 144th Street, Jamaica, New York 11435.

12.     These three companies, collectively, are the "Corporate Hospitality Defendants."

*Individual Defendants*

13.     Defendant KAUSHIK PATEL, an individual, is a manager and member of Exclusive Hospitality.

14.     Kaushik Patel is a manager and member of Krishna Hospitality.

15.     Kaushik Patel is a managing member and manager of Sterling Hospitality.

16.     Kaushik Patel resides in Queens, New York, within the jurisdiction of this Court.

17.     Defendant CHANDRESH PATEL, an individual, is a manager and member of Exclusive Hospitality.

18.     Chandresh Patel is a member of Krishna Hospitality.

19.     Chandresh Patel is a member of Sterling Hospitality.

20.     Chandresh Patel resides in Queens, New York, within the jurisdiction of this Court.

### THE HOSPITALITY DEFENDANTS OPERATE AS A SINGLE, INTEGRATED EMPLOYER

*The Corporate Hospitality Defendants Jointly and Collectively Employ the Hotels' Workers*

21.     Together, the three Corporate Hospitality Defendants employ the housekeepers, maintenance workers, and front desk agents at three Queens hotels.

22.     Exclusive Hospitality operates a Quality Inn franchise at 53-05 Queens Boulevard in Woodside.

23.     Krishna Hospitality operates a Country Inn & Suites franchise at 40-34 Crescent Street in Long Island City.

24.     Sterling Hospitality operates a Ramada franchise at 38-30 Crescent Street in Long Island City.

25.     Although each of the Corporate Hospitality Defendants primarily operates a single hotel franchise, the Corporate Hospitality Defendants share a common workforce.

26.     The Hospitality Defendants regularly assign some of their housekeeping and maintenance employees to work in more than one of the three locations in the same week.

27.     When a Hospitality Defendant employee scheduled to work at one location is sick or otherwise takes a day off, employees from the other two locations are directed to fill in.

28.     The Hospitality Defendants routinely transferred employees from one of the three locations to another.

29.     The Hospitality Defendants pay their employees from one or more Corporate Hospitality Defendant accounts, largely without regard to the location where the employee actually worked.

30.     In any given week, the Hospitality Defendants used the same payroll program and vendor to handle their payrolls.

*Kaushik Patel and Chandresh Patel Jointly Oversee the*
*Operations of the Corporate Hospitality Defendants*

31.     Together, Kaushik Patel and Chandresh Patel manage the operations of the three Corporate Hospitality Defendants and of each of the three hotel locations.

32.     Kaushik Patel personally participates in the day-to-day operations of Exclusive Hospitality, Krishna Hospitality, and Sterling Hospitality.

33.     On behalf of Exclusive Hospitality, Kaushik Patel signed the franchise agreement with Choice Hotels for the Quality Inn location.

34.     Kaushik Patel is the contact person registered with the New York Secretary of State for service of process on Exclusive Hospitality.

35.     Kaushik Patel is the contact person registered with the New York Secretary of State for service of process on Krishna Hospitality.

36.     Kaushik Patel is the contact person registered with the New York Secretary of State for service of process on Sterling Hospitality.

37.     The address for DOS Process for each of the Corporate Hospitality Defendants is a residence owned by Kaushik Patel and Chandresh Patel.

38.     Chandresh Patel personally participates in the day-to-day operations of Exclusive Hospitality, Krishna Hospitality, and Sterling Hospitality.

39.     Kaushik Patel and Chandresh Patel maintain an office at each of the three hotel locations.

40.     Kaushik Patel and Chandresh Patel personally visit or phone each of the three hotel locations on a nearly daily basis.

41.     Kaushik Patel has the authority to hire, and does hire, employees, including housekeeping, maintenance, and front desk workers, at each of the three hotel locations.

42.     Chandresh Patel has the authority to hire, and does hire, employees, including housekeeping, maintenance, and front desk workers, at each of the three hotel locations.

43.     Kaushik Patel has the authority to fire, and on occasion does fire, employees, including housekeeping, maintenance, and front desk workers, at each of the three hotel locations.

44.     Chandresh Patel has the authority to fire, and on occasion does fire, employees, including housekeeping, maintenance, and front desk workers, at each of the three hotel locations.

45.    Kaushik Patel has the authority to set wages, and together with Chandresh Patel, does set wages, for the employees at each of the three hotel locations.

46.    Chandresh Patel has the authority to set wages, and together with Kaushik Patel, does set the wages, for the employees at each of the three hotel locations.

47.    Kaushik Patel distributes paychecks to employees at each of the three hotel locations.

48.    Chandresh Patel distributes paychecks to employees at each of the three hotel locations.

49.    Kaushik Patel and Chandresh Patel personally sign the paychecks for all of the Hospitality Defendants' employees.

50.    Kaushik Patel distributes cash payments to employees at each of the three hotel locations.

51.    Chandresh Patel distributes cash payments to employees at each of the three hotel locations.

52.    Kaushik Patel has the power to, and does, train, discipline, and supervise employees at each of the three hotel locations.

53.    Chandresh Patel has the power to, and does, train, discipline, and supervise employees at each of the three hotel locations.

54.    Kaushik Patel and Chandresh Patel coordinated the hotel rooms' prices across the three locations.

55.    Under direction of Kaushik Patel and Chandresh Patel, front desk agents refer prospective patrons to the other Corporate Hotel Defendants' properties when no rooms were available at one of the locations.

56.     Kaushik Patel and Chandresh Patel used the same financial institution to finance construction of each of the three hotel locations' buildings.

57.     Kaushik Patel and Chandresh Patel used the same architect to design each of the three hotel locations' buildings.

58.     Defendant Kaushik Patel is an employer of the Hospitality Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

59.     Defendant Chandresh Patel is an employer of the Hospitality Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

*The Corporate Hospitality Defendants Are an Enterprise
Engaged in Commerce Within the Meaning of the Act*

60.     Together, the Corporate Hospitality Defendants are an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

61.     The Hospitality Defendants' business activities, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

62.     The Hospitality Defendants engage in the business of renting hotel rooms to members of the public.

63.     In pursuing this common business purpose, each Corporate Hospitality Defendant engages in substantially similar, if not identical, business activities.

64.     The Hospitality Defendants' business activities are performed under common control.

65.     Many of the Hospitality Defendants' employees regularly received paychecks from two of the Corporate Hospitality Defendants in the same pay period.

66.    A common management team, including Defendants Kaushik Patel and Chandresh Patel exercise control over the Corporate Hospitality Defendants' operations.

67.    At all relevant times, employees have been under common management of Defendants Kaushik Patel and Chandresh Patel, regardless of the hotel locations they were assigned to work in a given week.

68.    Defendants have unified operations.

69.    The Hospitality Defendants employ the housekeeping, maintenance, and front desk workers listed in Exhibit A, as well as other employees not presently known to the Plaintiff, in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including the handling of, selling of, or otherwise working on goods or materials that have been moved in or produced for commerce. These goods include but are not limited to cleaning supplies and computers.

70.    At all times relevant to this Complaint, Exclusive Hospitality had an annual gross volume of sales made or business done in an amount not less than $500,000.

71.    At all times relevant to this Complaint, Krishna Hospitality had an annual gross volume of sales made or business done in an amount not less than $500,000.

72.    At all times relevant to this Complaint, Sterling Hospitality had an annual gross volume of sales made or business done in an amount not less than $500,000.

73.    Therefore, the Hospitality Employers' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

74.    Together with Kaushik Patel and Chandresh Patel, the Corporate Hospitality Defendants are an employer of the Hospitality Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

### THE HOSPITALITY DEFENDANTS' PROHIBITED PAY PRACTICES

75.    Since at least 2015, the Hospitality Defendants have engaged in several schemes to underpay their employees, and to conceal evidence of the underpayments.

*The Hospitality Defendants Failed to Pay Premium Pay for All Overtime Hours Worked*

76.    During the time period at issue, the Hospitality Defendants used various means to avoid paying almost any overtime premiums to employees who worked more than 40 hours in a given week, as required by the Act.

77.    From at least 2015 through at least the fall of 2017 and in some cases beyond, most of the Hospitality Defendants' housekeeping employees regularly worked upwards of 48 hours per week, with some working as many as 80 or more hours in a week.

78.    From at least 2015 through at least early 2018, most of the Hospitality Defendants' front desk and maintenance employees regularly worked 60 or more hours per week, with some working as many as 80 or more hours in a week.

79.    From at least 2015 through at least the fall of 2017 and in some cases beyond, the Hospitality Defendants' employees generally worked five to seven shifts a week; each of these shifts generally exceeded eight hours and were sometimes as long as twelve hours.

80.    Accordingly, the Hospitality Defendants' employees regularly worked in excess of 40 hours per week, without receiving overtime pay at one and one-half their regular rate for the hours worked beyond 40 in that week.

81.    The Hospitality Defendants knew the number of hours that their employees worked because Defendants directed them to work those hours.

82.    The Hospitality Defendants paid some of their employees entirely in cash, others by one or more checks, and yet others by a combination of checks and cash.

83.    Regardless of the payment method used, at all times relevant to this Complaint, the Hospitality Defendants regularly denied their employees premium pay owed pursuant to the Act for hours worked over 40 per week.

The Hospitality Employers Used Separate Corporate Accounts to Conceal Employees' Total Hours and Deny Employees Premium Pay

84.    From 2015 through at least the summer of 2017, the Hospitality Defendants paid employees from multiple Corporate Hospitality Defendants' accounts for more than 40 hours of work in a single week.

85.    At such times, the Hospitality Defendants paid employees from one of the Corporate Hospitality Defendants' payroll accounts for up to 40 hours of work, and another of the Corporate Hospitality Defendants' payroll accounts for any remaining hours. None of these payments included premium pay.

86.    The Hospitality Defendants paid employees in this manner regardless of whether such employees had worked all hours in excess of 40 at one location that week; had worked more than 40 hours at a single location and additional hours at a second location; or had worked a total of 40 hours at multiple locations (with no more than 40 hours in one location).

87.    In other words, under this pay scheme, when an individual employee worked more than 40 hours for the Hospitality Employers in a given week, the Hospitality Employers paid that employee from a separate payroll so as to attempt to simulate compliance with the Act.

88.     Payroll records show that the Hospitality Employers paid employees with multiple checks from multiple payroll accounts in the same pay periods.

89.     For example, for the week of July 27 to August 2, 2015, payroll records show that an employee received one $350.00 check from Krishna Hospitality for 40 hours of work, and another $166.25 check from Sterling Hospitality for another 19 hours. Payroll records show that this employee was paid only the then-applicable New York State hourly minimum wage of $8.75 for all 59 hours of work that week — and no overtime premium payments.

90.     The Hospitality Employers' payroll records show that at least 13 other employees worked more than 40 hours that same week of July 27 to August 2, 2015 — an average of more than 53 hours that week. The Hospitality Employers did not pay any of these employees overtime premiums. Like the employee referenced in the previous paragraph, the Hospitality Employers paid these 13 employees in multiple checks from multiple payrolls.

91.     On occasion, the Hospitality Employers' payroll records also show that employees worked more than 40 hours in a single location, but the Hospitality Defendants still paid straight time for all hours, from a single payroll account for all hours.

92.     For example, the week beginning November 2, 2015, according to Krishna Hospitality's payroll records, an employee worked 77 hours but was paid a fixed hourly rate of $8.75 (the then-applicable state minimum wage) for all those hours.

93.     Similarly, the week beginning November 21, 2016, according to Sterling Hospitality's payroll records, an employee worked 49 hours but was paid a fixed hourly rate of $9.00 (the then-applicable state minimum wage) for all those hours.

<u>The Hospitality Employers Also Used Cash Payments to Conceal Employees' Total Hours and
Deny Employees Premium Pay</u>

94.    From at least 2015 through the summer of 2017, the Hospitality Employers also
used another scheme to deny employees overtime pay. When employees worked more than 40
hours for the Hospitality Defendants in a single week (regardless of whether at one or more
locations), the Hospitality Defendants paid employees: (1) a check for up to 40 hours of work,
and (2) cash at rates less than or equal to the employees' regular hourly rates for hours worked in
excess of 40 hours that week.

95.    In this pay scheme, the Hospitality Defendants did not pay overtime premiums
when employees worked more than 40 hours for the Hospitality Defendants at a single location
or at multiple locations.

96.    Most of Defendants' housekeeping, front desk, and maintenance employees
worked in excess of 48 to 60 or more hours at Defendants' locations. Defendants generally paid
these employees the hourly state minimum wage for the first 40 hours of work, and cash (at rates
equal to or lower than the hourly state minimum wage) for the remaining hours worked over 40.
The cash payments did not include any overtime premium.

97.    The Hospitality Defendants paid yet other employees entirely in cash. Such cash
payments did not include any overtime premium for hours over in 40 in weeks that employees
worked such hours.

<u>The Hospitality Employers Manipulated Employees' Rates of Pay to Conceal Employees' Total
Hours and Deny Employees Premium Pay</u>

98.    Around the summer of 2017, after the Wage and Hour Division began its
investigation of their pay practices, the Hospitality Employers devised a new means of flaunting
the overtime requirements.

99.     Under this third scheme, the Hospitality Defendants continued to pay only straight time for hours worked over 40, and used a formula to manipulate employees' supposed hourly rates of pay — ostensibly giving these employees raises — without actually changing the amounts employees were paid per hour. The higher hourly rates were intended to disguise the substantial numbers of hours over 40 that the Hospitality Defendants assigned their employees to work.

100.    In other words, the Hospitality Defendants falsified records purporting to show that their employees worked 40 or fewer hours weekly, when in fact employees worked 56 to 66 or more hours weekly, without receiving any overtime premiums.

*The Hospitality Defendants Failed to Make and Maintain Accurate Records, and Destroyed Other Records*

101.    Since at least 2015, the Hospitality Defendants have failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

102.    More specifically, the Hospitality Defendants failed to keep adequate and accurate records of, among other things, employees' daily and weekly hours of work, their regular or overtime rates of pay, and total wages paid.

103.    The Hospitality Defendants' recordkeeping violations not only independently violate the Act, but also further their schemes to deny employees their wages.

104.    Since at least 2015, the Hospitality Defendants did not create or maintain adequate and accurate records of the dates and times that their employees started and stopped work each day.

105.    Since at least 2015, the Hospitality Defendants did not create or maintain adequate and accurate records of the total regular and overtime hours that their employees worked each week.

106.    Since at least 2015, the Hospitality Defendants have failed to maintain any records of the hours employees actually worked.

107.    Around the summer of 2017, the Hospitality Defendants instituted a system for employees to sign timesheets supposedly indicating their start and stop times each day. Under this system, the Hospitality Defendants directed their front desk employees to list inaccurate start and stop times on these timesheets, to document falsely that employees worked no more than 40 hours per week.

108.    The Hospitality Defendants failed to make and maintain records of the amounts of cash wages paid to their employees.

109.    The Hospitality Defendants destroyed certain records of cash wages paid to their employees.

110.    On information and belief, the Hospitality Defendants destroyed certain records accurately reflecting employees' actual hours worked.

111.    Since approximately June 2017, the Hospitality Defendants' payroll records have not reflected accurate hourly rates of pay for many employees.

*The Hospitality Defendants' Violations of the Act Were Willful*

112.    The Hospitality Defendants have long known that their longstanding pay and recordkeeping practices violate the FLSA.

113.    As described herein, the Hospitality Defendants designed their pay practices to disguise their schemes to violate the Act, and designed their recordkeeping practices falsely to simulate compliance with the Act.

114.    After the Wage and Hour Division began an investigation of Defendants' pay practices, Kaushik Patel and Chandresh Patel directed employees to provide false information to the Wage and Hour Division about their hours and pay.

115.    After the Wage and Hour Division began its investigation, Defendants manipulated their pay and recordkeeping practices in the summer of 2017 to continue to hide their violations of the Act.

### TOLLING AGREEMENT

116.    On or about May 1, 2018, the Hospitality Defendants and the Secretary, through counsel, knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement ("Tolling Agreement").

117.    The Tolling Agreement tolls the applicable statute of limitations from January 1, 2018 until and including May 14, 2018.

118.    Accordingly, the Act's statute of limitations, as applied to all Defendants, shall be tolled from January 1, 2018 until and including May 14, 2018.

### FIRST CAUSE OF ACTION
### Violation of Sections 7(a) and 15(a)(2) of the FLSA
### Failure to Pay Overtime

119.    The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 118 of the complaint.

120.    The Hospitality Defendants willfully have violated the provisions of Sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the

production of goods for commerce, for workweeks longer than forty hours, as prescribed in Section 7 of the Act, without compensating the employees for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

121.    Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest under Section 17 of the Act.

## SECOND CAUSE OF ACTION
### Violation of Sections 11(c) and 15(a)(5) of the FLSA
### Failure to Make, Keep, and Preserve Adequate and Accurate Records

122.    The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 118 of the complaint.

123.    Defendants willfully have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the Regulations at 29 C.F.R. Part 516.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concern or participation with Defendants, from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5)of the Act;

17

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime wage compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees, and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Secretary for the costs of this action; and

5.  An order granting such other relief as the Court may deem necessary or appropriate.

DATED:          May 15, 2018
                New York, New York

                                    KATE S. O'SCANNLAIN
                                    Solicitor of Labor

                                    JEFFREY S. ROGOFF
                                    Regional Solicitor

                                    /s/ James R. Wong
                                    JAMES R. WONG
                                    Senior Trial Attorney

                        BY:         /s/ Jason E. Glick
                                    JASON GLICK
                                    Trial Attorney

                                    U.S. Department of Labor,
                                    *Attorneys for Plaintiff Secretary of Labor*

                                    U.S. Department of Labor
                                    Office of the Regional Solicitor
                                    201 Varick Street, Room 983
                                    New York, NY 10014
                                    (646) 264-3687
                                    (646) 264-3660 (fax)
                                    Glick.Jason.E@dol.gov
                                    NY-SOL-ECF@dol.gov

**EXHIBIT A**

Amin, Krunal G
Bala, Indu
Banger, Sangeeta
Begum, Jaheda
Begum, Sahanara
Bilas, Har
Cardoso, Sebastiao
Chen, Mei M
Chen, Xiufeng
Corona-Robles, Jamie
Fnu, Balwant Rai
Jabbar, Shahina
Kamrun, Nahar
Kantilal, Amrish
Kaur, Amarjit
Kaur, Baljinder
Kaur, Balvir
Kaur, Dalvir
Kaur, Gurpal
Kaur, Jasbir
Kaur, Jaswinder
Kaur, Joginder
Kaur, Kulwant
Kaur, Mohinder
Kaur, Paramjit
Kaur, Paramjit
Kaur, Parmajkumar
Kaur, Surinder
Kaur, Surinder
Kaur, Vir
Khatri, Bhim
Kumar, Rai Dilip
Kumari, Meena
Kumari, Sushil
Lal, Hussan
Liu, Mei Zhen
Mal, Jimmy
Mannan, Mohammad
Misa Perez, Mirian Yesenia

Patel, Aksharkumar

Patel, Akshar D

Patel, Bhavnaben

Patel, Chetan

Patel, Chirag

Patel, Harishlatta

Patel, Hinaben

Patel, Ilaben

Patel, Jaideep

Patel, Jayesh J

Patel, Kiranbhai K

Patel, Nilaben

Patel, Pankajkumar

Patel, Rushit H

Patel, Tulsi

Patel, Virendrabhai

Patel, Vishnubhai

Pravin, Shampa

Ramesh, Chander

Rani, Savita

Sagar, FNU

Sarkar, Ratna

Satia, Satia

Shah, Raj

Shampa, Parvin

Mouli, Sharma Chandra

Singh, Anju

Singh, Avtar

Singh, Gurpreet

Singh, Malinder

Singh, Parmjeet

Trivedi, Girishkumar

Ying, Lin Zhuo